UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
MANGANARO NORTHEAST, LLC,       )
                                )
    Plaintiff,                  )
                                )
v.                              )   Civil No. 18-11364-LTS
                                )
SANDRA DE LA CRUZ,              )
                                )
    Defendant.                  )
                                )

ORDER ON MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 5)

August 22, 2018

SOROKIN, J.

Plaintiff Manganaro Northeast, LLC ("Manganaro" or "the Company") sues its former employee, Defendant Sandra De La Cruz, for injunctive relief and damages in relation to De La Cruz's resignation from Manganaro and current employment with one of its competitors. Doc. No. 1. Presently before the Court is Manganaro's motion for a preliminary injunction to prohibit De La Cruz from certain employment activities. Doc. No. 5. For the reasons that follow, Manganaro's motion is DENIED.

I.    BACKGROUND

Manganaro is a Massachusetts contracting firm specializing in the installation of drywall in commercial buildings throughout New England. Doc. No. 7-2 ¶¶ 2-3. De La Cruz, a Connecticut resident, began working in Manganaro's Connecticut office in February 2016 as an Assistant Project Manager. Id. ¶¶ 4, 8. In that role, De La Cruz worked with Project Managers

on an as-needed basis to verify estimates, manage purchase orders, and oversee distribution of materials and equipment for Manganaro's job sites.[1]  Id. ¶ 7; Doc. No. 13-1 ¶¶ 7-9.

As a condition of her employment with Manganaro, De La Cruz entered into a Restrictive Covenant and Confidentiality Agreement (the "Agreement").  Doc. No. 7-2 ¶ 9; Doc. No. 13-1 ¶ 7.  The Agreement provided, in relevant part:

> Employee agrees that, during the course of this Agreement and for two years following the termination of Employee's employment with the Company by either party and for any reason, Employee will not, directly or indirectly, whether on behalf of him/herself or on behalf of any other person or entity, solicit, bid, work on, or be involved in any capacity with, any proposal, bid, application, project or customer that the Company contracted with, was involved with or was considering during Employee's employment with the Company. […]  Employee further agrees that, during the same two year period, Employee will not directly or indirectly engage in or contribute [her] knowledge and abilities to any business or entity in direct competition with the Company in Massachusetts, Connecticut, Rhode Island, Vermont, New Hampshire and Maine.

Doc. No. 1-1 ¶ 2 (the "non-compete clause").  The Agreement also contained a Confidentiality provision, which provided:

> Employee agrees to maintain the confidentiality of nonpublic information about the Company that Employee receives during the course of employment with the Company (referred to herein as "Confidential Information").  By way of example, and not in limitation, Confidential Information shall include, but not be limited to, financial information concerning the Company; bids, proposals or requests for proposals being considered by the Company, computerized project data, including productivity information, bid information, bid data and other computerized material not of a public nature; the terms of any project; personnel matters relating to the Company; and any other matters regarding the Company or its customers that Employee learns through his or her employment with the Company and that is not generally available to or by the public.  Any Confidential Information, as defined in this Paragraph, shall be used or disclosed by Employee only for the benefit of the Company. […]  Because the life of Confidential Information may extend indefinitely, this provision shall continue perpetually.

---

[1] De La Cruz represents that she occasionally interacted with clients and visited job sites, but that she had no involvement with marketing, bidding or contracting, staffing or scheduling, or managing and supervising other employees.  Doc. No. 13-1 ¶¶ 9-10.  She also states that she never saw a project from start to finish.  Id. ¶ 9.

Id. ¶ 3.

De La Cruz resigned from Manganaro in March 2018, telling her supervisor, Patrick Glomb, that she "wanted a new career path" and "did not know" what her next job was. Doc. No. 7-2 ¶ 17. In fact, De La Cruz accepted a job offer from Professional Drywall Construction, Inc. ("PDC"), a direct competitor to Manganaro in the drywall business in Massachusetts, Connecticut, and Vermont.[2] No. 7-2 ¶¶ 18, 20; Doc. No. 13-1 ¶ 13. Shortly thereafter, PDC contracted to perform drywall installation at Amherst College. Doc. No. 13-1 ¶ 15. Manganaro had provided drywall services at Amherst College as part of a multi-million-dollar project (the "Amherst College Project") since early 2017. Doc. No. 7-2 ¶ 21. Manganaro estimates that it has lost between $150,000 and $200,000 in revenue from work on the Amherst College Project now being performed by PDC. Id.

Manganaro seeks a preliminary injunction to prevent De La Cruz from violating the terms of the Agreement. Doc. No. 7 at 1. Specifically, Manganaro requests that the Court enjoin De La Cruz from (a) working for a competitor of Manganaro; (b) being involved with any proposals, bids, applications, projects, or customers that Manganaro contracted with, was involved with, or considered during De La Cruz's employment with Manganaro; (c) soliciting any employee or independent contractor of Manganaro to leave or compete with Manganaro; (d) using any confidential, proprietary information concerning the business or affairs of Manganaro or concerning Manganro's customers, clients, or employees; and (e) disclosing any trade secrets of Manganaro. Doc. No. 5-4. The practical effect of such an injunction would be to require De

---

[2] All references to "PDC" herein shall refer to both PDC and its affiliated company, GP Administrative Services, LLC, as identified in Manganaro's Verified Complaint, Doc. No. 1 at 1 n. 1.

La Cruz to resign from PDC and to search for employment in another field[3] or outside of New England. Doc. No. 13-1 ¶¶ 16-17.

II. ANALYSIS

In determining whether to grant a motion for a preliminary injunction, this Court must weigh four factors: (1) whether Manganaro has shown a likelihood of success on the merits, (2) whether Manganaro has shown that it would suffer irreparable harm if the injunction were denied, (3) the balance of the relevant hardships, and (4) any impact that the Court's ruling may have on the public interest. See ANSYS, Inc. v. Computational Dynamics North America, Ltd., 595 F.3d 75, 78 (1st Cir. 2010). The first factor—likelihood of success on the merits—is given particularly heavy weight. Id.

Manganaro limits its argument to its breach of contract claim (Count I). Doc. No. 1 ¶¶ 22-25; Doc. No. 7 at 7. The Court therefore does not address whether Manganaro is likely to succeed on its claims for breach of the covenant of good faith and fair dealing (Count II), misappropriation of trade secrets (Count III), and tortious interference with contractual and advantageous business relations (Count IV). Doc. No. 1 ¶¶ 26-38. To show a likelihood of success on its breach of contract claim, Manganaro must demonstrate that it is likely to establish that a valid, binding agreement existed, that De La Cruz breached the terms of the agreement,

---

[3] Request (b) in particular reaches far beyond "direct" competitors such as De La Cruz's present employer and would likely make it difficult or impossible for her to work for any large-scale business operating in the construction industry.

and that Manganaro sustained damages as a result of the breach. Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 32 (1st Cir. 2016).[4]

Under these circumstances, Manganaro fails to demonstrate that it sustained harm resulting from De La Cruz's employment with PDC. Manganaro has not attempted to show either that De La Cruz actually misappropriated any confidential information stored on Manganaro's computer server or that she actually disclosed or used any particular confidential information in her employment with PDC. Moreover, De La Cruz represents that she has not done so. Doc. No. 13-1 ¶ 14.

Manganaro attributes its lost business revenue from the Amherst College Project to De La Cruz's defection. Doc. No. 7-2 ¶ 21 ("It is estimated that the loss of revenue on the Amherst College Project due to the actions of De La Cruz and PDC is at least $150,000-$200,000 if not more."). However, De La Cruz represents that her involvement on the Amherst College Project while at Manganaro was limited to assisting Project Managers in the early stages and again from December 2017 until March 2018. Doc. No. 13-1 ¶ 11. Moreover, De La Cruz avers that she was not involved with the decision by the Amherst College Project's general contractor to engage PDC for drywall services and that she has done no work on the Amherst College Project while employed by PDC. Id. ¶ 15. At a hearing on this motion, Manganaro offered no facts to dispute De La Cruz's characterization of her limited work on the Amherst College Project and her lack of connection to PDC's work for Amherst. Thus, Manganaro has not shown that it is likely to establish that De La Cruz caused Manganaro to suffer lost revenue in relation to the Amherst College Project.

---

[4] The Agreement provides that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without regard to its conflicts of law principles." Doc. No. 1-1 ¶ 14. The Court therefore applies Massachusetts law in resolving this motion.

Manganaro falls back on its contention that, if De La Cruz has not already done so, she inevitably will disclose and use Manganaro's confidential and proprietary information and trade secrets at PDC in the course of performing her regular duties. Doc. No. 7 at 10. However, the <u>potential</u> disclosure of confidential information, alone, as a result of De La Cruz's employment with PDC does not indicate a likelihood of establishing an actually-occurring contractual breach or damages actually sustained. <u>U.S. Elec. Services, Inc. v. Schmidt</u>, 2012 WL 2317358 at *8-9 (D. Mass. June 19, 2012) (summarizing cases addressing the inevitable disclosure doctrine and concluding that a party may not rely solely on inevitable future conduct, rather than conduct that has actually occurred, to establish a likelihood of success on the merits). Whereas Manganaro alleges no use or disclosure of its confidential information that has already occurred, Manganaro has not demonstrated a likelihood of success on the merits of its claim for breach of contract.[5]

Manganaro advances an additional argument in support of the likelihood of success on the merits of its contract claim: that De La Cruz breached the non-compete clause's prohibition on working for a direct competitor. There is no dispute that the Agreement prohibits De La Cruz from "directly or indirectly engag[ing] in or contribut[ing] [her] knowledge and abilities to any business or entity in direct competition" with Manganaro and from "work[ing] on, or being involved in any capacity with, any proposal, bid, application, project or customer that the Company contracted with, was involved with or was considering during" De La Cruz's employment with Manganaro. Doc. No. 1-1 ¶ 2. There is also no dispute that PDC is a direct competitor to Manganaro in Connecticut. Under Massachusetts law, "[n]on-competition [a]greements are enforceable only if they are 'necessary to protect a legitimate business interest,

---

[5] Because the Court separately finds that the non-compete clause is unenforceable as against De La Cruz in this dispute, De La Cruz's alleged breach of the non-compete clause cannot serve as already-transpired harm in support of Manganaro's inevitable disclosure argument.

reasonably limited in time and space, and consonant with the public interest.'" Lombard Medical Tech., Inc. v. Johannessen, 729 F.Supp.2d 432, 438 (D. Mass. 2010) (citing Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 639 (2004)). "Courts will not enforce non-competition agreements meant solely to protect employers from run-of-the-mill business competition[, b]ut the protection of trade secrets, other confidential information, and the good will the employer has acquired through dealings with his customers constitute legitimate business interests." Aspect Software, Inc. v. Barnett, 787 F.Supp.2d 118, 128 (D. Mass. 2011) (citations and quotation marks omitted).

The Agreement's non-compete clause, as applied to De La Cruz on the present facts, is unenforceable. The contract language is quite broad. It prohibits De La Cruz from working, in any way, for any direct competitor to Manganaro and from working on a project for any customer of Manganaro's (without regard to De La Cruz's connection to the customer while at Manganaro). The non-compete clause also applies throughout all of New England for a period of two years. While De La Cruz was a manager, not a laborer on the site, she had no involvement with marketing, no role in preparing or submitting bids, limited contact with customers, no oversight responsibility for any project, and no identified knowledge of particular trade secrets beyond a general knowledge of Manganaro's operations and some possibly-confidential, successful bids made by Manganaro. As to Manganaro's operations, Manganaro has not established that it had developed some "secret sauce" to the operation of its business that it shared with De La Cruz. In short, De La Cruz stands in wholly different shoes than a vice president of research and development who was one of the four top managers supervising an entire company hired away by its direct competitor to serve in an identical position. See Aspect Software, 787 F.Supp.2d 118. Thus, for purposes of the motion for a preliminary injunction,

Manganaro has not established a likelihood of success on its claim that the non-compete clause is enforceable.

III. <u>CONCLUSION</u>

Accordingly, Manganaro's motion for a preliminary injunction (Doc. No. 5) is DENIED. The parties shall file a joint status report by August 31, 2018 proposing the schedule to govern this case or requesting that the Court schedule a Rule 16 conference in the ordinary course.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge